Harry M. Klass, Appellee, v. Isadore Yavitch and Lester Felsen, Appellants.

Gen. No. 41,049.

Opinion filed November 29, 1939.

W. B. Steinberg and Jacob Mogill, of Chicago, for appellants; Morris K. Levinson, of Chicago, of counsel.

Kamfner & Halligan, of Chicago, for appellee; Edwin A. Halligan and Samuel M. Lanoff, of Chicago, of counsel.

Mr. Justice McSurely delivered the opinion of the court.

This is an appeal from an interlocutory order appointing a receiver. The appointment was made upon

petitions, answers and affidavits without the taking of any testimony.

September 22, 1938, the three parties named, as plaintiff and defendants, entered into articles of partnership to operate and control premises located at 755 N. Dearborn street known as the Rice Hotel in Chicago; the premises were under a lease to defendant Yavitch, and the partnership was coterminous with the lease. The agreement provided for the operation of a hotel, recited that Yavitch held one-half interest, plaintiff Klass one-fourth interest and defendant Felsen one-fourth interest in the lease and furnishings; there was a provision for a division of the profits in these proportions. It was also provided that ''all management and control in the operations of the said business shall be in the hands of Isadore Yavitch.'' There were other provisions with reference to the checking accounts; that no partner might sell or assign his interest in the partnership without the written consent of the other parties. This agreement was executed by all the parties.

August 15, 1939, plaintiff Klass filed a complaint to dissolve the partnership. He alleged that although by the agreement each of the partners should have full access to the books, on July 28, 1939, defendants took exclusive possession of the partnership assets and books, refusing plaintiff access thereto. There are allegations that Yavitch had not made certain repairs which he was bound by the terms of the lease to do under pain of forfeit of lease; that one-half of the hotel was vacant and the partnership suffering great losses; that although he has applied to the defendants for them to make a full and fair account in respect to the partnership transactions, they refused to do so. There are other allegations with reference to dealings of plaintiff with defendant Felsen which do not seem to be relevant to the instant question, namely, the propriety of the appointment of a receiver. Plaintiff

asked for various relief, including the dissolution of the partnership and an accounting and division of any surplus, and for the appointment of a receiver of the premises.

Defendants filed an answer admitting the formation of the partnership, asserting that they kept proper books of account, denied that they took exclusive possession of the partnership assets and books or refused to allow plaintiff access thereto, and asserted that they are now subject to inspection at any time and at his convenience. Defendants further alleged that by the partnership agreement Yavitch should have the sole management of the business; that he employed plaintiff as a clerk in the hotel at a fixed weekly salary; that while plaintiff was so employed he permitted his friends and others to occupy rooms in the hotel without payment; that he operated the hotel so that it began to lose business, and Yavitch was forced to take over management of the property in order to save its asserts. Defendants alleged that all repairs and rehabilitations necessary to be made under the lease were made in accordance with the terms of the lease and that the copartnership is not in default in any of its undertakings. There is an allegation that plaintiff has transferred his interest to third persons with the intent to harass these defendants into purchasing his one-fourth interest at an exhorbitant figure. Defendant Yavitch further asserted that since he has taken charge of the hotel the income has greatly increased; that since defendants have taken over the management they have increased its occupancy to over 80 per cent.

A supplemental petition was filed on behalf of plaintiff, representing that an audit had been made of the books during the time it was operated by Yavitch which showed a loss of $2,150 and asserting that the gross income from the hotel under the management of the defendants is approximately $300 less per month than when it was operated by plaintiff. This petition al-

leged that the business was mismanaged and was insolvent.

Pursuant to rule entered, defendant Yavitch filed his answer to this supplemental petition, alleging that plaintiff, prior to the time Yavitch took possession of the property, recklessly incurred many debts and liabilities without regard to the ability of the property to pay the same out of income, and defendant averred that since he has managed the property he has been paying off these debts, as well as current expenses, out of the income. Defendant says that the hotel has been handicapped because the city of Chicago is constructing a subway and has placed a large air compressing machine on Dearborn street directly south of the door of the hotel and that due to the noise and dirt produced by this machine the procuring of new business for the hotel has necessarily been handicapped. Defendant denied that the business was mismanaged and insolvent and was continually going into debt.

An affidavit made by an auditor was filed who said that he had examined the books while the hotel was under the supervision of plaintiff, which showed that if the rent had been paid the deficits would have averaged $230 per month; that under the new management there was an average monthly deficit, caused by the payment of old bills incurred by the previous management; that without these payments of old bills the three months under the new management would have shown an average monthly profit of $143.

The trial court after considering the petitions, answers and affidavits, appointed a receiver of the partnership assets, including the operation and control of the Rice Hotel, and plaintiff and defendants were ordered to turn over to him all books and effects belonging to the partnership.

In High on Receivers (4th Ed.) page 6, are some general observations touching the appointment of receivers which should receive consideration. "It is a peremptory measure, whose effect, temporarily at

least, is to deprive of his property a defendant in possession, before a final judgment or decree is reached by the court determining the rights of the parties. It is therefore not to be exercised doubtingly, but the court must be convinced that the relief is needful, and that it is the appropriate means of securing an appropriate end. And since it is a serious interference with the rights of the citizen, without the verdict of a jury and before a regular hearing, it should be granted only for the prevention of manifest wrong and injury. And because it divests the owner of property of its possession before a final hearing, it is regarded as a severe remedy, not to be adopted save in a clear case, and never unless plaintiff would otherwise be in danger of suffering irreparable loss. And since a receivership is a harsh and costly remedy, interfering seriously with the rights of persons in possession, courts of equity exercise extreme caution in the appointment of receivers and withhold the remedy until a proper case has been made therefore.''

On the showing made by the petitions, answers and affidavits we do not discern a state of facts which would authorize the appointment of a receiver. The noise made by the air compressor connected with the building of the subway is a sufficient reason why the hotel would suffer a temporary loss of patronage.

Reduced to its simplest elements the case is one where, under new management, improvement commenced which would have in time taken care of all of the obligations incurred by plaintiff, including current expenses, and would have made the enterprise a profitable one.

47 Corpus Juris 1218, sec. 930, states the general rule as follows:

''The court will refuse to appoint a receiver of partnership property where it is not shown that such appointment is necessary for the protection of property rights or interests of the parties, and that there is danger of loss unless a receiver be appointed. It has

been held proper to refuse to appoint a receiver where the partner in possession of the assets is responsible, and the assets are inadequate to bear the expense of a receiver; . . . where defendant has not been guilty of any breach of partnership duty; . . . Where neither of the individual partners nor the firm is insolvent and there is no manifestation of any disposition to defeat creditors or of any purpose on the part of either partner to take advantage of the other, the mere fact that the partners are unable to agree upon an adjustment of the affairs is not a sufficient reason for the appointment of a receiver.''

In *Ingram v. Clover Leaf Lumber Co.,* 331 Mo. 739, 55 S. W. (2d) 295, it was held that where a defendant's verified answer denied the essential allegations of plaintiff's petition seeking the appointment of a receiver of a partnership, the appointment of a receiver was erroneous. The opinion in that case further held that mere inability of partners to agree on partnership affairs does not justify the appointment of a receiver and that equity may compel an accounting without the appointment of a receiver. In 53 Corpus Juris 66, sec. 66, it is stated as the well-established rule that where the essential allegations in the complaint for the appointment of a receiver have been denied in a sworn answer, a receiver cannot be appointed unless plaintiff overcomes these denials by proof in support of his pleadings. It should be borne in mind that in the instant case no proof was had to support plaintiff's averments. The essential allegations were denied by defendants. If evidence should support defendants' answer the appointment of a receiver would be unnecessary. It was clearly erroneous to appoint a receiver upon the bare allegations of plaintiff which are denied by the defendants in all essential matters.

The order appointing a receiver is therefore reversed.

*Reversed.*

MATCHETT, P. J., and O'CONNOR, J., concur.